UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KIRSTIN SCONIERS,

      Plaintiff,

v.                            Case No:    5:14-cv-237-Oc-10PRL

FNU LOCKHART and
MATTHEW B. McNEELY,

      Defendants.

_____/

## ORDER

Plaintiff, a state prisoner proceeding *pro se*, initiated this case by filing a Civil Rights Complaint Form pursuant to 42 U.S.C. § 1983, and a subsequent Amended Complaint. (Docs. 1, 39). In his Amended Complaint, Plaintiff claims that while incarcerated at the Marion County Jail his Fourth and Eighth Amendment Rights were violated by Correctional Officer Lockhart ("Lockhart") and Sergeant Matthew B. McNeely ("McNeely"). (Doc. 39). The Defendants have filed Motions for Summary Judgment. (Docs. 50, 78). Plaintiff has filed responses in opposition to the motions.[1] (Docs. 55, 56, 60, 81, 82, 83). The matter is ripe for review. For the reasons that follow, Defendants' motions for summary judgment are granted, in part, and denied, in part.

## Background

---

[1] Notices were given to the Plaintiff concerning his rights under Rule 56 as required by the law of the Circuit. See Docs. 54 and 88; Griffith v. Wainwright, 772 F.2d 822 (11th Cir. 1985).

The relevant facts from the allegations in the Amended Complaint disclose the following events.  Plaintiff is a state prisoner in the custody of the Florida Department of Corrections, but at all times relevant to this case, Plaintiff was incarcerated at the Marion County Jail.  Specifically, on February 12, 2014, Plaintiff was serving a jail sentence for his January 28, 2014 conviction for exposure of sexual organs.[2]

On February 12, 2014, Plaintiff was in the upstairs section of the A-E Dormitory and had just concluded a video-visit with his attorney.  (Doc. 39). Plaintiff claims that as he attempted to leave the room Lockhart ordered him to sit back down.  Id.   Plaintiff states that he complied with the first order, and then Defendant Lockhart ordered him to "sit down" and to "stand up" three more times. Id.  After the third order to "stand up," Plaintiff asked Lockhart, "What kind of games are you playing?" and Lockhart responded by pepper spraying Plaintiff twice in the face.  Id.  Lockhart then slammed Plaintiff to the floor, slapped him in the face, and forcefully stuck a finger into his anus. Id.  Plaintiff states that there were two officers in the watch tower that witnessed this series of events.  Id.

All of the evidence is to the effect that the Plaintiff was fully clothed at all times during the encounter between Lockhart and the Plaintiff.  Specifically, the Plaintiff does not state that his clothing was removed to facilitate the alleged

---

[2] See Doc. 50-10, p. 1-2.  On January 28, 2014, Plaintiff was sentenced to 240 days in the Marion County Jail with credit for 93 days time served.  Id.; State of Florida v. Sconiers, Case No. 42-2013-MM-8267 (Marion County, Fla.).

2

assault upon his rectum.  The Court necessarily infers that Lockhart's rectal assault was carried out through the Plaintiff's clothing and did not involve body-to-body contact.

Plaintiff was then taken to a shower for decontamination, where he was forced to shower while shackled and clothed.  Id.  After the shower, Plaintiff was escorted back to his cell by "several officials" including Lockhart and McNeely.  Id. Plaintiff was ordered to remove his jail uniform prior to entering his cell, but was unable to comply due to being handcuffed.  Id.  The Defendants then came into the cell with Plaintiff to remove his handcuffs so he could remove his jail uniform. Id.  When his cell door was closed, Plaintiff was ordered to return the restraints. Id.  Once he got to the door, Plaintiff claims Lockhart "maliciously pull[ed] my arms, an[d] waist, by way of hand-restraints."  Id.  McNeely then used a TASER on Plaintiff's right arm two times, causing him to fall to his knees.  Id.  Plaintiff claims he was then placed in a restraint chair for eight hours.  Id.

Based on these allegations, Plaintiff includes claims for cruel and unusual punishment, excessive use of force, and sexual assault. (Doc. 39).  Plaintiff argues that his Eighth Amendment rights were violated as a result of the Defendants' actions and requests compensatory and punitive damages from each Defendant, individually.

## Summary Judgment Motion and Evidence

Defendants maintain that Plaintiff was pepper sprayed for failing to comply with orders and a take-down maneuver was executed to maintain control when

Plaintiff responded combatively to the pepper spray.   Defendants further maintain that Plaintiff was tasered for failing to comply with orders and to gain compliance with the order to release Lockhart's arm.

In his sworn affidavit, Lockhart states that on February 12, 2014 he was observing Plaintiff's video conference from the Alpha Pod rover's area.  (Doc. 50-1, p. 3).   At the end of the video conference, Plaintiff stood up and yelled, "Fuck ya'll; I'm out" and at that time Lockhart ordered him to sit down while he cleared the rover's area.[3]   Id.   Lockhart agrees that Plaintiff sat down, but states that Plaintiff immediately stood back up and yelled "Fuck you, Lockhart, what the fuck you gonna do."   Id.   Lockhart states that he told Plaintiff to sit back down or he would be pepper sprayed.   Id.   Plaintiff did not comply, so Lockhart administered a single burst of pepper spray to his facial area.[4]   Id.   Plaintiff then became combative and lunged at Lockhart who "took him to the ground."   Id.

---

[3] Plaintiff was a "red suit" inmate; meaning he wore a solid red inmate uniform and was classified as a Maximum Felony inmate.  Anytime such an inmate is moved out of the pod, he must be shackled with leg irons, waist chains, and handcuffed.  At least two corrections officers must escort him.  (Doc. 50-1, p. 2-3).

[4] Defendants also submitted affidavits from Corrections Officer John Monck and Corrections Assistant Carla Tucker, who were in the control tower and could see into the video visitation room from their location.  Monck stated:
> When the visit ended, I saw [Plaintiff] stand up to go back downstairs.  [Lockhart] ordered him to "sit back down."  I saw [Plaintiff] arguing with the officer, and sitting and standing up two or three more times after he had been told to take a seat.  I saw [Lockhart] administer one short burst of pepper spray to the inmate's facial area.

(Doc. 50-4, p. 2).
> Tucker stated:
> When the visit ended, I saw [Plaintiff] stand up.  [Lockhart] ordered him to "sit down."  I saw [Plaintiff] get aggressive with [Lockhart], and he continued to stand up after being told to sit two or three times.  I saw [Lockhart] pepper spray [Plaintiff] once.

Lockhart contends that while he and McNeely escorted Plaintiff to the shower, Plaintiff was being verbally abusive to all the staff present, was spitting on the ground, and yelled, "I will kill all you cracker motherfuckers, I want ya'll to fucking kill me.  I'm gonna make ya'll fucking kill me."  Id.  Lockhart states that due to Plaintiff's combativeness he was placed in the shower without removing his uniform or his shackles and handcuffs.  Id.  After Plaintiff was returned to his cell, he refused several orders to remove his uniform.  Id. at p. 4. Defendants entered the cell to assist Plaintiff in removing his uniform.  Id.

After exiting the cell and closing the cell door, Lockhart states that Plaintiff extended his hands through the food hatch so that he could remove the handcuffs. Id.  While Lockhart was attempting to remove the handcuffs Plaintiff grabbed Lockhart's left wrist and was pulling his left arm into the cell while digging his fingernails into his wrist.  Id.  McNeely attempted to free Lockhart's wrist from Plaintiff's grasp, but Plaintiff repeatedly clawed at his hand and arm to prevent him from doing so.  (Doc. 50-2, p. 2).  Defendant McNeely then removed the cartridge from his taser and "applied one drive stun activation to the inmate's right forearm" causing Plaintiff to release Lockhart's wrist.  Id. at p. 2-3.  Lockhart states that Captain Burnett, the Watch Commander, ordered for Plaintiff to be placed in the restraint chair for inmate and officer safety.  (Doc. 50-1, p. 4).

_____

(Doc. 50-5, p. 2).

On February 12, 2014, Lockhart wrote Incident Report #14015050 describing the circumstances surrounding Plaintiff's actions.  Id. at p. 7-9.  On February 21, 2012, the Disciplinary Review Board found Plaintiff guilty of (1) conduct which disrupts or interferes with the security, (2) disobeying written or verbal order(s), and (3) battery or attempted battery, with or without a weapon.  Id.

Defendants submit an affidavit of Meyer Carter, an investigator with the Marion County Sheriff's Office.  (Doc. 50-6).  Carter stated that he was given an Inmate Request Form on February 27, 2014, that was filled out by Plaintiff on February 26, 2014.  Id. at p. 4, 20.  The form described the events as alleged in this Complaint.  Id.  Carter conducted a recorded interview with Plaintiff within approximately a half-hour of receiving the inmate request form.  Id.  During the interview, Plaintiff recounted the series of events similarly to his allegations in this Complaint, except that he said that after he was pepper sprayed he complied with Lockhart's orders and laid down on the ground on his own.  Id. at p. 20.  Carter closed the case as unfounded and noted that Plaintiff "has a well documented history of bad behavior and threats on officers in the jail.  [Carter] has arrested him two times on four different charges since his coming to jail in October of 2013." Id. at p. 20.  Carter then arranged for Plaintiff to be seen by Ocala Community Care, the contractual medical provider for the jail, immediately after the interview.  Id. at p. 5, 20. On February 28, 2014, Carter prepared Incident Report #14015240 regarding his investigation into Plaintiff's allegations.  Id. at p. 20-21.

Defendants also submit a use of force report created at the time of the incidents that confirm their version of events and notes that "all aspects of this report fall within operational directive guidelines." (Doc. 50-6, p. 9-11). Carter reviewed the use of force report and subsequently prepared an arrest affidavit charging Plaintiff with two counts of Battery on a Law Enforcement Officer and one count of Resisting or Obstructing an Officer Without Violence. Id. at p. 3, 15-16. On May 16, 2014, Plaintiff entered a plea of guilty to all counts as charged. Id. at p. 17-18; State of Florida v. Sconiers, Case No. 42-2014-CF-0542 (Marion County, Fla.).

Defendants also submit what appears to be all of Plaintiff's medical records that were compiled during his incarceration at the Marion County Jail.[5] (Docs. 50-7, 50-8.) Among the records are entries from the day of the events alleged in the Complaint and entries made after Plaintiff first reported that he was sexually assaulted. The entry dated February 12, 2014 at 12:40:49 p.m., was part of the post use-of-force exam and the attending provider noted, "I/M unable to be examined due to safety. I/M said, 'anyone coming near me will get my spit.'" Id. at p. 202. In entry dated February 12, 2014 at 3:18:01 p.m., the attending provider noted, "Checked restraints WNL. Moved to S/P per officers request. I/M told the officers that he was going to make them kill him." Id. at p. 203. In the entry dated

---

[5] On March 18, 2015, Plaintiff signed an Authorization for Release of Information authorizing Ocala Community Care/Marion County Jail to release "all records as listed below" from "2010 to the present." (Doc. 50-9).

February 12, 2014 at 6:49:52 p.m., the attending provider noted, "Checked I/M restraints WNL no signs of edema or redness.  I/M very hostile, refused medication verbally abusive." Id. at 205.

In the entry dated February 27, 2014 at 4:52 p.m., it noted that Plaintiff was complaining of pain when having a bowel movement.  (Doc. 50-8, p. 40-42).  The record notes that Plaintiff stated, "On February 14th [sic], I had an incident with an officer" and "when I use the restroom number 2, it stings and I have some blood on the toilet paper." Id. at 41.  Plaintiff stated that the pain began 13 days ago, but "I was in suicide watch and didn't trust telling anyone my situation and I put it in writing." Id.  Plaintiff reported that the stinging remained for approximately 10 minutes after a bowel movement, and the pain level was a 7 out of a possible 10. Id.  Plaintiff was referred by the nurse for an appointment on the next day with the Medical Director, Dr. Jaime Rubio. Id.

Dr. Rubio examined Plaintiff on February 28, 2014. Id. at 44.  The report notes that Plaintiff was brought to the Infirmary for an evaluation of the allegation of sexual assault by an officer. Id.  Plaintiff alleged that the officer inserted a finger in his rectum and he complained of soreness and blood on tissue paper after bowel movement. Id.  The doctor performed a rectal exam and found a "very small non thrombotic, not swollen external hemorrhoids, no fissure, no blood on glove, no tenderness to digital exam." Id.

Plaintiff submits a nine page brief in opposition to Lockhart's motion for summary judgment and 37 page declaration in opposition to Lockhart's motion for

summary judgment, in which Plaintiff restates the information in his amended complaint and denies the facts as stated in Lockhart's motion and attached affidavits.  (Docs. 55, 56).  Plaintiff also submits a fifteen page brief in opposition to McNeely's motion for summary judgment, two "sworn affidavits,"[6] a six page declaration in opposition, and a three page document titled "Plaintiff's Statement of Disputed Factual Issues."

## **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

---

[6] Both "sworn affidavits" were "sworn to or affirmed and signed before me" followed by Plaintiff's name and signature.  (Docs. 81-1, 81-2).

The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785-86 (11th Cir. 2005). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990). Further, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." Id.

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard v. Banks, 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of

material fact.  See, e.g. Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).

## Discussion

### I.  Excessive Force

Plaintiff claims that Lockhart subjected him to excessive force in the video visitation room when he pepper sprayed him twice in the face, slammed him to the ground, and slapped him in the face.[7]  Plaintiff also claims that Lockhart subjected him to excessive force at his cell door by maliciously pulling on his arms and waist by way of his restraints.  Plaintiff claims that McNeely subjected him to excessive force at his cell door when McNeely used his taser twice on Plaintiff's right arm.

The Eighth Amendment's prohibition against cruel and unusual punishment, applicable to the State of Florida through the Due Process Clause of the Fourteenth Amendment,[8] prohibits the "unnecessary and wanton infliction of pain."[9]  In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation.[10]  An excessive force claim requires a two-prong showing:  (1) an objective showing of a deprivation or

---

[7] Plaintiff's claim that Lockhart forcefully stuck his finger in his anus will be addressed separately, below.

[8] Robinson v. California, 370 U.S. 660 (1962).

[9] Thomas v. Bryant, 614 F.3d 1288 (11th Cir. 2010) (citing Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

[10] Id.

injury that is "sufficiently serious" to constitute a denial of "minimal civilized measure of life's necessities" and (2) a subjective showing that the official had a "sufficiently culpable state of mind;" both of these inquiries are contextual.[11]

Excessive force claims in a prison context require a showing of a heightened mental state – that the defendants applied force "maliciously and sadistically for the very purpose of causing harm."[12]  Under this standard, courts look at "the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner."[13] Additionally, the courts should consider the extent of the threat to the safety of the staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response."[14]  A *de minimus* use of force, as evidenced by *no* injury, typically cannot support a claim of excessive use of force.[15]

The use of chemical agents on disruptive prisoners is not *per se* unconstitutional.  Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (*overruled on other grounds*) ("Pepper spray is an accepted non-lethal means of controlling

---

[11] Id. at 1304 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

[12] Wilson v. Seiter, 501 U.S. 294, 303 (1991) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

[13] Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007).

[14] Id.

[15] Hudson v. McMillian, 503 U.S. 1, 7-8 (1992).

unruly inmates[,] … [and a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders"); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984) ("The Supreme Court has never held, nor have we or any other court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment …").  However, when chemical agents are used unnecessarily, without penological justification, or for the purpose of punishing or harming an inmate, the use is unconstitutional.  See Danley, 540 F.3d at 1311 (holding that prolonged exposure to pepper spray due to failure to properly decontaminate an inmate may form the basis of an Eighth Amendment claim; Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (use of additional bursts of pepper spray after inmate attempted to comply sufficiently alleged Eighth Amendment claim.)

A taser functions by sending "an electric pulse through the body of the victim causing immobilization, disorientation, loss of balance, and weakness."[16]  When used effectively, a stun gun "temporarily incapacitates a threatening person, [giving] the officers involved momentary advantage and a chance to neutralize the threat."[17]  "[I]n a difficult, tense and uncertain situation the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force."  Zivojinovich v. Barner, 525

---

[16] Buckley v. Haddock, 292 Fed. Appx. 791, 803 (11th Cir. 2008) (citing Matta-Ballesteros v. Henman, 896 F.2d 255, 256 n. 2 (7th Cir. 1990)).

[17] Hickey v. Reeder, 12 F.3d 754 (8th Cir. 1993).

F.3d 1059, 1073 (11th Cir. 2008) (citation and internal quotations omitted); Draper
v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (same).  In Hoyt v. Cooks, 672
F.3d 972, 976 n.4 (11th Cir.), cert. denied, 133 S. Ct. 138 (2012), the Eleventh
Circuit noted the difference between the prong mode and the drive stun mode (also
known as dry stun mode), as described by an expert:

> The [Taser] was classified as an electromuscular disruptor when used to
> fire small probes attached to the weapon with thin wires because, in that
> mode, it overrides the central nervous system and makes muscle control
> impossible. The TASER can also be used as a pain compliance weapon in
> what is called the "drive stun" mode. In the "drive stun" mode, the weapon
> is pressed against a person's body and the trigger is pulled resulting in pain
> (a burning sensation) but the "drive stun" mode does not disrupt muscle
> control.

Use of Pepper Spray

The first issue with regard to Plaintiff's claim centers around whether or not
there was a penological justification for the use of chemical agents on Plaintiff.
Plaintiff maintains that Defendant Lockhart twice administered chemical agents on
him on February 12, 2014 without warning or justification.  Defendants counter that
Plaintiff, a "red suit" inmate, refused an order to be seated while the rover's area
was cleared, yelled profanities, was issued a verbal warning about being pepper
sprayed if he did not comply, and chemical agents were only administered after
Plaintiff failed to obey orders multiple times.

The Court has reviewed all of the summary judgment evidence submitted by
the parties and determines that there is no genuine dispute as to whether a

penological reason existed for the use of force.   Defendants Lockhart and McNeely, Corrections Officer Monck and Corrections Assistant Tucker swore under oath that Plaintiff was disobeying Lockhart's orders prior to the administration of a single burst of pepper spray.  (Docs. 50-1, 50-2, 50-4, 50-5). The sworn evidence does not stand alone.  Defendants have also submitted a use of force report and a probable cause affidavit, which confirm Defendants' version of events, including Plaintiff's disruptive behavior and refusal to sit down despite direct orders.  (Doc. 50-6).

The sworn evidence Plaintiff submits is his amended complaint and two declarations that generally contain the same statements.  (Docs. 39, 56, 82).  His final declaration, Doc. 82, does contain one notable difference.  In that declaration, Plaintiff states that he complied with Lockhart's first order to remain seated, but "I was then ordered to sit back down (3) times."  (Doc. 82, p. 2).  If Plaintiff had complied with the order to remain seated, as he claimed, there would be no need for three subsequent orders to sit back down.  This declaration supports the Defendants' statements that Plaintiff was disobeying orders and that was the reason for the use of force.  A permissible use of force by prison guards is to restore order within a prison.  See Whitely, 475 U.S. at 320-21; Fischer v. Ellegood, 238 F. Appx. 428, 431 (11th Cir. 2007).  Accordingly, the use of force was in response to Plaintiff's failure to comply with direct orders.

The next issue is whether the force used was excessive in relation to the need for force.  The Eleventh Circuit addressed this issue in Danley, finding that a

15

"short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders."  Danley, 540 F.3d at 1307.  The exact situation presents itself here – the burst of pepper spray was intended to control Plaintiff, who was not obeying Lockhart's orders to remain seated.  Thus, there was no violation concerning the amount of force used in relation to the need for force.

Finally, the Court must consider whether Plaintiff's exposure to the pepper spray caused injury that violates the Eighth Amendment.  Plaintiff states in his Amended Complaint that after being pepper sprayed, he was taken to the shower for chemical decontamination.  Plaintiff neither alleged injury from the use of force, nor did he seek medical treatment for any injury related to his exposure to pepper spray.  Thus, there is no genuine dispute that any alleged injury from the use of pepper spray on Plaintiff was at worst, *de minimus*, and does not support a violation of the Eighth Amendment.

Accordingly, for the reasons discussed above, the Court concludes that there is no genuine dispute of material fact that precludes the entry of summary judgment on Plaintiff's Eighth Amendment claim related to the use of pepper spray.  Defendant Lockhart is therefore entitled to summary judgment as to this claim.

Use of Take-down Maneuver

The first issue with regard to Plaintiff's claim centers around whether or not there was a penological justification for the use of a take-down maneuver on Plaintiff.  Plaintiff maintains that after he was pepper sprayed in the face, Lockhart

16

slammed him to the floor and slapped him in the face.  Defendants counter that Plaintiff responded combatively to the pepper spray and that Lockhart executed a take-down maneuver to gain control.  Lockhart denies slapping Plaintiff in the face.

The Court has reviewed all of the summary judgment evidence submitted by the parties and determines that there is no genuine dispute as to whether a penological reason existed for the use of force.  Defendants Lockhart and McNeely swore under oath that Plaintiff was taken to the ground by Lockhart to obtain compliance, with Lockhart adding that Plaintiff lunged at him prior to the take-down. (Docs. 50-1, 50-2).   Defendant Lockhart, Corrections Officer Monck, and Corrections Assistant Tucker swore under oath that Lockhart did not slap Plaintiff. (Docs. 50-1, 50-4, 50-5).  Defendant McNeely swore under oath that Plaintiff did not say anything to him about being slapped in the face by Lockhart.  (Doc. 50-2). The sworn evidence does not stand alone.  Defendants have also submitted a use of force report, a probable cause affidavit, and two incident reports, which confirm Defendants' version of events.  (Docs. 50-1, 50-6).

The sworn evidence Plaintiff submits is his amended complaint and two declarations that generally contain the same statements.  (Docs. 39, 56, 82). However, in the first declaration, Doc. 56, Plaintiff merely claims that Lockhart "force[d]" him to the floor, not "slammed" as alleged in his other statements.  Also, in incident report #14015240, Plaintiff, in a recorded interview, stated that after he was pepper sprayed, Lockhart ordered him to the ground, and he complied and

laid on the floor on his stomach.  (Doc. 50-6, p. 20).  Because restoring order within a prison is a permissible use of force, Lockhart's actions were reasonable.

The next issue is whether the force used was excessive in relation to the need for force.  Because the Plaintiff gave conflicting versions as to the amount of force utilized by Lockhart, there is not "sufficient evidence of every element that he or she must prove."[18]  Furthermore, because Plaintiff did not claim he was injured, provided no evidence of an injury, nor did he seek medical treatment due to the use of force, there is no evidence of any injury due to the use of force.

Accordingly, for the reasons discussed above, the Court concludes that there is no genuine dispute of material fact that precludes the entry of summary judgment on Plaintiff's Eighth Amendment claim related to the use of the take-down manuever.  Defendant Lockhart is therefore entitled to summary judgment as to this claim.[19]

<u>Use of Taser</u>

Plaintiff alleges that on February 12, 2014, Defendant McNeely used excessive force during the incident at the cell door.  (Doc. 39, p. 7).  While Defendant Lockhart was allegedly "maliciously pull[ing]" Plaintiff's arms and waist by way of the restraints, Plaintiff claims that McNeely "tazered" him twice on his

---

[18] <u>Rollins</u>, 833 F.2d at 1528.

[19] Plaintiff's claim that Lockhart slapped him in the face while he was on the ground following the take-down maneuver, similarly fails because he does not claim to have suffered even a *de minimus* injury.

right arm.  Id.  However, on February 14, 2014, Plaintiff was arrested[20] for two counts of Battery on an Officer and one count of Resisting Officer – Obstruct without Violence; stemming from the incident at the cell door.  See Doc. 50, Exh. 6, Exh. C.  On March 14, 2014, Plaintiff was charged, by Information, in Marion County Circuit Court with two counts of Battery on Detention Staff or Juvenile Probation Officer and one count of Resist Law Enforcement Officer without Violence.  (Doc. 78, Exh. 1); see also State of Florida v. Sconiers, Case No. 42-2014-CF-0542-A-Y (Marion County).  On May 16, 2014, Plaintiff entered a plea of guilty to all counts as charged.  (Doc. 50, Exh. 6, Exh. C).

Due to his conviction, Plaintiff is precluded by Heck v. Humphrey[21] from asserting that he did not commit a battery on both Defendants McNeely and Lockhart at the cell door.  As such, Defendant McNeely's use of the TASER to cause Plaintiff to release his grip on Defendant Lockhart's arm was not applied

---

[20] The probable cause affidavit stated, in part:

> After decontamination, Defendant was returned to his cell where he was instructed to put his hands through the slot in the door so Officer Lockhart could remove his handcuffs. While Officer Lockhart was removing the handcuffs, Defendant grabbed Officer Lockhart's left arm and tried to pull the arm back through the door slot.  When Sergeant McNeely grabbed Defendant's handcuffs to assist, Defendant dug his fingernails into Sergeant McNeely's right wrist.  Defendant refused to release Officer Lockhart and Sergeant McNealy had to use his TASER on Defendant's right forearm to break the grip.

(Doc. 50, Exh. 6, Exh. C).

[21] Heck v. Humphrey, 512 U.S. 477 (1994) (When state prisoner seeks damages in § 1983 suit, district court must consider whether judgment in favor of prisoner would necessarily imply invalidity of his conviction or sentence; if it would, complaint must be dismissed unless prisoner can demonstrate that conviction or sentence has already been invalidated.)

"maliciously and sadistically for the very purpose of causing harm."   Defendant McNeely is therefore entitled to summary judgment in his favor as to this claim.

II.   Sexual Assault

The Constitution "does not mandate comfortable prisons," but neither does it permit inhumane ones.  Farmer v. Brennan, 511 U.S. 825, 832 (1994), quoting, Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  It is now well-settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  Id., quoting, Helling v. McKinney, 509 U.S. 25, 31 (1993); Campbell v. Sikes, 169 F.3d 1353, 1362 (11 Cir. 1999).   In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, violently assault prisoners.  Farmer, 511 U.S. at 834 (stating that "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'") quoting, Rhodes, 452 U.S. at 347.

More specific to the allegations of this case, the Eleventh Circuit has "join[ed] other circuits [in] recognizing that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment."  Boxer X v. Harris, 437 F.3d 1107, 1111 (11 Cir. 2006) (citations omitted).  "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society."  Id. (citation and quotation omitted).  The Eleventh Circuit concluded in Boxer X that there is an objective component of the Eighth Amendment inquiry, which requires

that the injury be "objectively, sufficiently serious," and a subjective component, which requires the prison official have a "sufficiently culpable state of mind." Id. (citations omitted). The court noted that under Eleventh Circuit precedent about the nature of actionable injuries under the Eighth Amendment, an injury can be "objectively, sufficiently serious" only if there is more than *de minimis* injury. Id., (citing Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). See also Berryhill v. Schriro, 137 F.3d 1073, 1076–77 (8th Cir. 1998) ("Demonstrating a serious or permanent injury is not required to make out an Eighth Amendment claim, but some actual injury must be shown and the extent of the injury and pain suffered are relevant concerns in determining whether the conduct amounts to cruel and unusual punishment.") (citation omitted).

The undisputed facts related to the sexual assault are as follows.  Plaintiff filed an Inmate Request Form, dated February 26, 2014, stating that on February 13, 2014 [sic], Lockhart put his index finger into Plaintiff's buttocks.  Investigator Carter received the form on February 27, 2014 and Plaintiff was then interviewed that same day.  Incident Report #14015240 was prepared regarding Carter's investigations into Plaintiff's claim.  After the interview with Carter, Plaintiff was sent to medical for an examination.  The medical records show that Plaintiff was complaining that his "anal area stings . . . when having a bowel movement" and he has blood on the toilet paper.  The records also reflect that the pain was caused after he "had an incident with an officer" 13 days ago, but that he didn't report it because he "was in suicide watch and didn't trust telling anyone my situation."  On

the following day, the doctor performed an exam and found "small ext[ernal] hemorrhoids otherwise normal exam."  After receiving medical attention, Plaintiff made no additional complaints for rectal related issues.

Defendant Lockhart denies Plaintiff's claim and provided affidavits from the two witnesses in the control tower to support him.  Investigator Carter investigated Plaintiff's claims and declared them unfounded.  The medical records do not reflect that any injury occurred due to Plaintiff's allegations.

There is, therefore, a direct conflict between the testimony of the Plaintiff and the testimony of Lockhart with a resulting factual issue as to whether a penetration of the Plaintiff's rectum occurred.  The Court concludes, nevertheless, accepting the truth of the Plaintiff's claim in the light of the totality of the evidence relating to it, that the circumstances presented simply do not rise to the level of an actionable constitutional tort in violation of the Eighth Amendment.

The Plaintiff's injury was *de minimus*.  The assault occurred on one occasion through the Plaintiff's clothing without excessive violence in the midst of an otherwise lawful use of physical force, and there was no resulting bodily injury.  His claims of rectal discomfort and minor bleeding was not supported by the medical examination, was consistent with his hemorrhoids, and was not a serious medical condition in any event.

In Boxer X, the male plaintiff was forced, under threat of reprisal, at least six times over a period of several months to masturbate for the viewing pleasure of a female corrections officer.  Noting that ". . . severe or repetitive sexual abuse of a

22

prisoner by a prison official can violate the Eighth Amendment" 437 F.3d at 111, (citations omitted), the court nevertheless dismissed the plaintiff's Eighth Amendment claim because his injury was *de minimus*. The same result is reached if one focuses on the force that was used – the force used here was *de minimus*. See Reid v. Sec'y, Florida Dep't of Corr., 486 Fed. Appx. 848 (11th Cir. 2012).

    III.    Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1327 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002)). Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985). If the evidence regarding qualified immunity at the summary judgment stage of a § 1983 action, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial. Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002).

To receive qualified immunity, a government official must first prove that he was acting within his discretionary authority. Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). Defendant Lockhart contends that he was acting within his discretionary authority during the operative events, and Plaintiff does not dispute

23

it.  Under these circumstances, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  Id.  The Supreme Court has formulated a two-part test to determine whether qualified immunity should apply.  The court must determine whether the plaintiff's allegations, if true, establish a constitutional violation.  Pelzer, 536 U.S. at 736.  This requires the court to decide whether the facts as alleged by the party asserting the injury to show the officer's conduct violated a constitutional right.  Gonzalez, 325 F.3d at 1234.  The second prong of the test requires the court to determine whether the right was "clearly established" at the time of the violation.  Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)).  Following the Supreme Court's clarification in Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009), these two determinations may be made in either order at the discretion of the court.  Lewis, 561 F.3d at 1291.

The Eleventh Circuit, joining other circuits, has recognized that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Constitution.  See Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006); see also Boddie v. Schneider, 105 F.3d 857, 860-61 (2d Cir. 1997).  "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society."  Boddie, 105 F.3d at 861 (citation and quotation omitted).

However, the alleged condition must be objectively serious enough to amount to a constitutional deprivation.  See Bell v. Wolfish, 441 U.S. 520, 539 n.21

24

(1979 ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); Boxer X, 437 F.3d at 1111; see also Breeden, 280 F.3d at 1321; Cnty. of Sacramento v. Lewis, 523 U.S. 833, 848 (1998) (even though a trivial use of force may be cognizable under state tort law, "the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States"). Under the Fourteenth Amendment, an injury can be "objectively, sufficiently serious" only if there is more than de minimis injury. See Breeden, 280 F.3d at 1321; Boxer X, 437 F.3d at 1111.

Because the Court has determined that there was no Constitutional violation in Lockhart's physical contact with the Plaintiff, Lockhart has qualified immunity with respect to Plaintiff's claims.

## Conclusion

Based on the foregoing, Defendant McNeely's Motion for Summary Judgment (Doc. 78) is **GRANTED**.  Further, summary judgment is **GRANTED** with respect to Plaintiff's claims against Defendant Lockhart. (Doc. 50).  The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff, to terminate any unresolved motions and close the file.

IT IS SO ORDERED

DONE AND ORDERED at Ocala, Florida this 6th day of October, 2016.



UNITED STATES DISTRICT JUDGE

Copies to:  Plaintiff; Counsel of Record